## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**AHMED MOHAMMED ABDULLAH**
**AL HAKIMI**
    **Detainee, ISN 030,** )
    **Guantanamo Bay Naval Station** )
    **Guantanamo Bay, Cuba;** )
)
    *Petitioner/Plaintiff,* )
)     **PETITION FOR WRIT**
**v.** )     **OF HABEAS CORPUS**
)     **AND COMPLAINT FOR**
**GEORGE W. BUSH,** )     **DECLARATORY AND**
    **President of the United States** )     **INJUNCTIVE RELIEF**
    **The White House** )
    **1600 Pennsylvania Avenue, NW** )     **No.** _____
    **Washington, D.C. 20500;** )
)
**ROBERT GATES,** )
    **Secretary, United States** )
    **Department of Defense** )
    **1000 Defense Pentagon** )
    **Washington, D.C. 20301-1000;** )
)
**Navy Rear Adm. David M. Thomas Jr.,** )
    **Commander, Joint Task Force - GTMO** )
    **JTF-GTMO** )
    **APO AE 09360; and** )
)
**Army Col. Bruce Vargo ,** )
    **Commander, Joint Detention** )
        **Operations Group - JTF-GTMO,** )
    **JTF-GTMO** )
    **APO AE 09360;** )
)
*Respondents/Defendants.* )
)

## PETITION FOR WRIT OF HABEAS CORPUS AND COMPLAINT FOR
## DECLARATORY AND INJUNCTIVE RELIEF

Petitioner seeks the Great Writ. A citizen of Yemen, Petitioner is a civilian wrongly

classified as an "enemy combatant" by the President of the United States. He is being held in

military custody at the United States Naval Station at Guantánamo Bay, Cuba ("Guantánamo"), without basis, without charge, without access to counsel, and without being afforded any fair process by which he might challenge his detention.

Petitioner is being held under color and authority of the Executive, and in violation of the Constitution, laws and treaties of the United States and in violation of customary international law. Accordingly, this Court should issue a Writ of Habeas Corpus compelling Respondents either to release Petitioner or to establish in this Court the lawful basis for his detention. This Court should also order injunctive and declaratory relief.

Pursuant to the President's authority as Commander-in-Chief, his authority under the laws and usages of war, or under the November 13, 2001 Executive Order, Respondents George W. Bush, President of the United States, Robert Gates, U.S. Secretary of Defense, Navy Rear Adm. David M. Thomas Jr., Commander of Joint Task Force-GTMO, and Army Col. Bruce Vargo, Commander, Joint Detention Operations Group, Joint Task Force-GTMO, are either ultimately responsible for or have been charged with the responsibility of maintaining the custody and control of Petitioner at Guantánamo.

## I.

## JURISDICTION

1. Petitioner brings this action under 28 U.S.C. §§ 2241(c)(1) and (c)(3), and 2242. Petitioner further invokes this Court's jurisdiction under 28 U.S.C. §§ 1331, 1350, 1651, 2201, and 2202; 5 U.S.C. § 702; Articles I and II of, and the Fifth and Sixth Amendments to, the United States Constitution. Because he seeks declaratory relief, Petitioner also relies on Fed. R. Civ. P. 57.

2. This Court is empowered under 28 U.S.C. § 2241 to grant this Writ of Habeas Corpus. This Court is further empowered to declare the rights and other legal relations of the

parties herein by 28 U.S.C. § 2201, and to effectuate and enforce declaratory relief by all necessary and proper means by 28 U.S.C. § 2202, as this case involves an actual controversy within the Court's jurisdiction. Finally, this Court is authorized to issue all writs necessary or appropriate in aid of its jurisdiction by 28 U.S.C. § 1651.

## II.

## PARTIES

3.  Petitioner Ahmed Mohammed Abdullah Al Hakimi, ISN 030, is a citizen of Yemen, born and raised in Saudi Arabia. He has been incarcerated at Guantánamo, in Respondents' unlawful custody and control, continuously since approximately January 16, 2002. *See* Exhibits A and B.

4.  Respondent George W. Bush is the President of the United States and Commander-in-Chief of the United States Military. Petitioner is being detained pursuant to President Bush's authority as Commander-in-Chief, under the laws and usages of war or, alternatively, pursuant to the Executive Order of November 13, 2001, Detention, Treatment, and Trial of Certain Non-Citizens in the War Against Terrorism, 66 Fed. Reg. 57,833 (November 13, 2001) ("Executive Order"). President Bush is responsible for Petitioner's unlawful detention and is sued in his official capacity.

5.  Respondent Robert Gates is the United States Secretary of Defense. Pursuant to the President's authority as Commander-in-Chief, under the laws and usages of war or, alternatively pursuant to the Executive Order, Respondent Gates has been charged with the responsibility of maintaining the custody and control of Petitioner. He is sued in his official capacity.

6.     Respondent Navy Rear Adm. David M. Thomas Jr. is the Commander of Joint Task Force-GTMO, the task force running the detention operation at Guantánamo Bay. He has supervisory responsibility for Petitioner and is sued in his official capacity.

7.     Respondent Army Col. Bruce Vargo is the Commander of the Joint Detention Operations Group and the JTF-GTMO detention camps, including the U.S. facility where Petitioner is presently held. He is the immediate custodian responsible for Petitioner's detention and is sued in his official capacity.

8.     Respondents are directly responsible for any activities undertaken by or under the supervision of any agents or employees acting on their behalf, or of agents or employees of private contractors ("contractor employees") with whom any agency under Respondents' authority or supervision has contracted for the provision of services at Guantánamo. All references to Respondents' actions in this Petition include activities performed by Respondents' agents or employees, other government agents or employees, or contractor agents or employees.

**III.**

**STATEMENT OF FACTS**

9.     Upon information and belief, Petitioner is not, nor has he ever been, an enemy alien, lawful or unlawful belligerent, or combatant of any kind under any definition adopted by the government in any civil or military proceeding.

10.    Upon information and belief, Petitioner is not, nor has he ever been, an "enemy combatant" who was "part of or supporting forces hostile to the United States or coalition partners in Afghanistan and who were engaged in an armed conflict against the United States there." *Hamdi v. Rumsfeld*, 542 U.S. 507, 516, 124 S. Ct. 2633, 2639 (plurality) (2004).

11.     Petitioner seeks to enforce his right to a judicial determination by an appropriate and lawful authority that there is a factual and legal basis for Respondents' determination that he is either an "enemy combatant" as defined by the United States Supreme Court in *Hamdi* or an "enemy combatant" as that term is defined and used by the Executive in the Combatant Status Review Tribunals.

12.     Upon information and belief, at the time of his seizure and detention, Petitioner was not a member of the Taliban government's armed forces or Al Qaeda. He did not cause or attempt to cause any harm to American personnel or property prior to his detention. He had no involvement, direct or indirect, in the terrorist attacks on the United States on September 11, 2001, the ensuing international armed conflict, or any act of international terrorism attributed by the United States to Al Qaeda. He remains incarcerated at the U.S. Naval base at Guantánamo, Cuba, a territory over which the United States exercises exclusive jurisdiction and control.

13.     Petitioner has not been afforded any procedures that would satisfy his rights under the most fundamental common law notions of due process, the U.S. Constitution, the laws and treaties of the United States, or customary international law.

14.     Upon information and belief, Petitioner desires to pursue in the courts of the United States every available legal challenge to the lawfulness of his detention.

**The Joint Resolution**

15.     In the wake of the September 11, 2001 attacks on the United States, the United States, at the direction of President Bush, began a massive military campaign against the Taliban government, then in power in Afghanistan. On September 18, 2001, a Joint Resolution of Congress authorized President Bush to use force against the "nations, organizations, or persons" that "planned, authorized, committed, or aided the terrorist attacks on

September 11, 2001, or [that] harbored such organizations or persons." Joint Resolution 23, Authorization for Use of Military Force, Public Law 107-40, 115 Stat. 224 (Jan. 18, 2001) ("Joint Resolution").

16.  As, upon information and belief, Petitioner did not participate in the armed conflict at any point in time, he is not properly detained pursuant to President Bush's authority as Commander-in-Chief, under the laws and usages of war, or under the Joint Resolution.

17.  Upon information and belief, Petitioner is not, and has never been, a member of Al Qaeda or any other terrorist group. Prior to his detention, he did not commit any violent act against any American person or espouse any violent act against any American person or property. He had no involvement, direct or indirect, in the terrorist attacks on the United States on September 11, 2001, or any act of international terrorism attributed by the United States to Al Qaeda or any other terrorist group. He is not properly subject to the detention order issued by President Bush. As he did not participate in the armed conflict at any point in time, he is not properly subject to President Bush's authority as Commander-in-Chief or under the laws and usages of war.

### The Executive Order

18.  On November 13, 2001, Respondent Bush issued an Executive Order authorizing Donald Rumsfeld, predecessor to Respondent Gates as Secretary of Defense, to detain indefinitely anyone Respondent Bush has "reason to believe:"

    i.    is or was a member of the organization known as al Qaeda;

    ii.    has engaged in, aided or abetted, or conspired to commit, acts of international terrorism, or acts in preparation therefor, that have caused, threaten to cause, or have as their aim to cause, injury to or adverse effects on the United States, its citizens, national security, foreign policy, or economy; or

    iii.    has knowingly harbored one or more individuals described in subparagraphs (i) and (ii).

*See* Executive Order, 66 Fed. Reg. 57,833, §2 (November 13, 2001). President Bush must make this determination in writing. The Executive Order was neither authorized nor directed by Congress, and is beyond the scope of the Joint Resolution of September 18, 2001.

19.     The Executive Order purports to vest President Bush with the sole discretion to identify individuals who fall within its purview. It establishes no standards governing the exercise of his discretion. Once a person has been detained, the Executive Order contains no provision for that person to be notified of the charges he may face. The Executive Order authorizes detainees to be confined indefinitely without charges. It contains no provision for a detainee to be notified of his rights under domestic and international law, and provides neither the right to counsel, nor the rights to notice of consular protection or to consular access at the detainee's request. It provides no right to appear before a neutral tribunal to review the legality of a detainee's continued detention and contains no provision for recourse to an Article III court. In fact, the Executive Order expressly bars review by any court. The Executive Order authorizes indefinite and unreviewable detention, based on nothing more than the President Bush's written determination that an individual is subject to its terms.

20.     The Executive Order was promulgated in the United States and in this judicial district, the decision to incarcerate Petitioner was made by Respondents in the United States and in this judicial district, the decision to detain Petitioner at Guantánamo was made in the United States and in this judicial district, and the decision to continue detaining Petitioner was, and is, being made by Respondents in the United States and in this judicial district.

21.     Upon information and belief, President Bush has never certified or determined in any manner, in writing or otherwise, that Petitioner is subject to the Executive Order.

22.    Petitioner is not properly subject to the Executive Order.

23.    Petitioner has not been, and is not being, detained lawfully either pursuant to the Executive Order, President Bush's authority as Commander-in-Chief and/or under the laws and usages of war. Petitioner was not arrested or detained by the United States in the course of an armed conflict. Petitioner is not properly detained under President Bush's authority as Commander-in-Chief or under the laws and usages of war.

### Guantánamo Bay Naval Station

24.    On or about January 11, 2002, the United States military began transporting prisoners captured in Afghanistan to Camp X-Ray at the United States Naval Base in Guantánamo Bay, Cuba. In April 2002, all prisoners were transferred to Camp Delta, a more permanent prison facility at Guantánamo. Currently, prisoners are also housed in Camps Five and Six, additional maximum-security interrogation and detention centers.

25.    Prisoners incarcerated at Guantánamo are entitled to test the legality of their detention in the federal courts. *Rasul v. Bush*, 542 U.S. 466, 484, 124 S. Ct. 2686, 2698 (June 28, 2004); *Boumediene v. Bush*, 553 U.S. ___ (2008).

26.    On or about January 16, 2002, the United States military transferred Petitioner to Guantánamo, where he has been held ever since, in the custody and control of Respondents.

### The Conditions of Detention at Guantanamo

27.    Since gaining control of Petitioner, the United States military has held him virtually *incommunicado.*

28.    Upon information and belief, Petitioner has been and will be interrogated repeatedly by agents of the United States Departments of Defense and Justice, and the Central Intelligence Agency, though he has not been charged with an offense and has not been

notified of any pending or contemplated charges. He has not appeared before a lawful military or civilian tribunal, and has not been provided access to counsel. He has not been adequately informed of his rights under the United States Constitution, the regulations of the United States Military, the Geneva Convention, the International Covenant on Civil and Political Rights, the American Declaration on the Rights and Duties of Man, the 1954 Convention Relating to the Status of Refugees or customary international law. Indeed, Respondents have taken the position that Petitioner should not be informed of these rights. As a result, Petitioner lacks any ability to protect or to vindicate his rights under domestic and international law.

29.  Upon information and belief, Petitioner has been forced to provide involuntary statements to Respondents' agents at Guantanamo.

30.  Upon information and belief, Petitioner has been held under conditions that violate his constitutional and international rights to dignity and freedom from torture and from cruel, inhuman and degrading treatment or punishment. *See, e.g.*:

   a.  Amnesty International, "Guantánamo and Beyond: The Continuing Pursuit of Unchecked Executive Power," at 83-115, Ch. 12-13, AMR 51/063/2005 (13 May 2005) (available at http://www.amnesty.org/en/library/info/AMR51/063/2005 http://web.amnesty.org/library/Index/ENGAMR510632005);

   b.  Physicians for Human Rights, "Break Them Down: Systematic Use of Psychological Torture by US Forces," Ch.3 (2005) (available at http://physiciansforhumanrights.org/library/report-2005-may.html ;

   c.  Physicians for Human Rights, "Broken Laws, Broken Lives: Medical Information of Torture by US Personnel and Its Impact," June 17, 2008 (available at http://brokenlives.info.)

  d. United Nations Press Release, "United Nations Human Rights Experts Express Continued Concern About Situation of Guantánamo Bay Detainees," Feb. 4, 2005 (available at http://www.unhchr.ch/huricane/huricane.nsf/0/F3AF690DC18BFFD6C1256F9E0034 AC95?opendocument);

  e. International Committee of the Red Cross, Press Release, "The ICRC's Work at Guantánamo Bay," Nov. 30, 2004 (available at http://www.icrc.org/web/eng/siteeng0.nsf/htmlall/678fk8?opendocument );

  f. International Committee of the Red Cross, Operational Update, "US Detention Related to the Events of September 11, 2001 and Its Aftermath - the Role of the ICRC," July 26, 2004 (available at http://www.icrc.org/Web/Eng/siteeng0.nsf/iwpList74/D8B5101EE13FCDD6C1256E DD004C580F);

  g. Amnesty International, *United States of America: Human Dignity Denied: Torture and Accountability in the 'War on Terror'*, at 22 (Oct. 27, 2004) (available at http://www.amnesty.org/en/library/info/AMR51/145/2004 );

  h. Human Rights Watch, "Locked Up Alone: Detention Conditions and Mental Health at Guantanamo," June 2008 (available at http://hrw.org/reports/2008/us0608).

  i. *see also* Barry C. Scheck, *Abuse of Detainees at Guantanamo Bay*, The Nat'l Assoc. of Criminal Defense Lawyers Champion, Nov. 2004, at 4-5 (available at http://www.nacdl.org/public.nsf/698c98dd101a846085256eb400500c01/01a2426440 d05a4285256f6a00558f34?OpenDocument ).

31. Indeed, many of these violations – including extended isolation, 28-hour interrogations, extreme and prolonged stress positions, sleep deprivation, sensory assaults, removal of

clothing, hooding, and the use of dogs to create anxiety and terror – were actually interrogation techniques approved for use at Guantánamo by the most senior Department of Defense lawyer. *See, e.g.*, Action Memo from William J. Haynes II, General Counsel, DOD, to Secretary of Defense (Nov. 27, 2002); *Pentagon Working Group Report on Detainee Interrogations in the Global War on Terrorism: Assessment of Legal, Historical, Policy and Operational Considerations*, at 62-65 (Apr. 4, 2003).[1]

32.  In a confidential report to the United States government, the ICRC charged the U.S. military with intentional use during interrogations of psychological and physical coercion on prisoners at Guantánamo that is "tantamount to torture." *See* Neil A. Lewis, "Red Cross Finds Detainee Abuse in Guantánamo," *New York Times*, Nov. 30, 2004, at A1. The report includes claims that doctors and other medical workers at Guantánamo participated in planning for interrogations. *Id.*; *see also* M. Gregg Bloche and Jonathan H. Marks, "When Doctors Go to War," *New England Journal of Medicine*, Jan. 6, 2005, at 3-4.

33.  Since details of the ICRC's report emerged, new revelations of abuse and torture at Guantánamo have appeared, including FBI memos detailing torture and "highly aggressive interrogation techniques" including 24-plus hour interrogations involving beatings, temperature extremes, dogs, prolonged isolation, and loud music. *See, e.g.*:

a.  Inspector General at the Department of Justice, "A Review of the FBI's Involvement In and Observation of the Detainee Interrogations in Guantanamo Bay, Afghanistan,

---

[1]     Additional details of the cruel and degrading conditions suffered by detainees at Guantanamo are set out at length in a statement by numerous released British detainees. *See* Shafiq Rasul, Asif Iqbal & Rhuhel Ahmed, *Composite Statement: Detention in Afghanistan and Guantanamo Bay*, 300, *at* http://www.ccr-ny.org/v2/reports/docs/Gitmo-compositestatementFINAL23 july04.pdf). The Department of Defense also informed the Associated Press that a number of interrogators at Guantanamo have been demoted or reprimanded after investigations into accusations of abuse at the facility. *See Report Details Guantanamo Abuses*, Associated Press, Nov. 4, 2004.

and     Iraq."     May     20,     2008     (available     at
http://www.usdoj.gov/oig/special/s0805/final.pdf.)

b. Carol D. Leonnig, "Guantanamo Detainee Says Beating Injured Spine; Now in
Wheelchair, Egyptian-Born Teacher Objects to Plan to Send Him to Native Land,"
*Washington Post*, Aug. 13, 2005, at A18;

c. Amnesty International, "Guantánamo and Beyond: The Continuing Pursuit of
Unchecked Executive Power," at 83-115, Ch. 12-13, AMR 51/063/2005 (13 May
2005);

d. *Guantánamo: An Icon of Lawlessness,* Amnesty International, Jan. 6, 2005, at 3-5;

e. Neil A. Lewis, "Fresh Details Emerge on Harsh Methods at Guantánamo," *New York
Times*, Jan. 1, 2005, at A11;

f. Carol D. Leonnig, "Further Detainee Abuse Alleged; Guantánamo Prison Cited in
FBI Memos," *Washington Post*, Dec. 26, 2004, at A1;

g. Neil A. Lewis and David Johnston, "New F.B.I. Memos Describe Abuses of Iraq
Inmates," *New York Times*, Dec. 21, 2004, at A1;

h. Dan Eggen and R. Jeffrey Smith, "FBI Agents Allege Abuse of Detainees at
Guantánamo Bay," *Washington Post*, Dec. 21, 2004, at A1;

i. Neil A. Lewis, "F.B.I. Memos Criticized Practices at Guantánamo," *New York Times*,
Dec. 7, 2004, at A19.

34. As well, the Associated Press has reported allegations that female Guantánamo
interrogators have used sexual taunting, including smearing fake menstrual blood on a
detainee's face, to try to break Muslim detainees. *See* Associated Press, *Gitmo Soldier
Details Sexual Tactics*, Jan. 27, 2005; *see also* Amnesty International, "Guantánamo and

Beyond: The Continuing Pursuit of Unchecked Executive Power," at 89-90, Ch. 12, AMR 51/063/2005 (13 May 2005).

35. In fact, some of the well-publicized and egregious interrogation techniques used in the Abu Ghraib torture debacle—such as aggressive use of dogs, sexual humiliation, stress positions and sense deprivation—were pioneered at Guantánamo. *See* Josh White, "Abu Ghraib Dog Tactics Came From Guantanamo; Testimony Further Links Procedures at 2 Facilities," *Washington Post*, July 27, 2005, at A14; *and* Josh White, "Abu Ghraib Tactics Were First Used at Guantanamo," *Washington Post*, July 14, 2005, at A1.

36. The unlawful and unconstitutional interrogation techniques used by Respondents at Guantánamo include not only physical and psychological abuse but also other impermissible conduct contrary to due process requirements, including, upon information and belief, having agents of the Government present themselves as lawyers for the detainees during meetings with the detainees, for the purpose of extracting information from the detainees. *See* Sam Hannel, "Lawyers Describe Guantánamo Detainees," *Seattle Post-Intelligencer*, Jan. 19, 2005.

37. Respondents, acting individually or through their agents, have stated that limitations, which normally apply on coercive interrogation techniques used by U.S. military officials under the auspices of the Department of Defense, *do not apply* to interrogations conducted by agents of the CIA or other entities under President Bush. *See, e.g.,* Amnesty International, "Guantánamo and Beyond: The Continuing Pursuit of Unchecked Executive Power," at 27-43, Ch. 5, AMR 51/063/2005 (13 May 2005); Eric Lichtblau, "Gonzales Says '02 Policy on Detainees Doesn't Bind CIA," *New York Times*, Jan. 19, 2005, at A17; Dan Eggen and Charles Babington, "Torture by U.S. Personnel Illegal, Gonzales Tells Senate," *Washington Post*, Jan. 18, 2005, at A4.

38.     In published statements, President Bush and former Secretary Rumsfeld, and
predecessors of Thomas and Vargo, respectively, Lenhert and Carrico, have proclaimed
that the United States may hold the detainees under their current conditions indefinitely.
*See, e.g.,* Roland Watson, *The Times* (London), Jan. 18, 2002 ("Donald Rumsfeld, the
U.S. Defense Secretary, suggested last night that Al-Qaeda prisoners could be held
indefinitely at the base. He said that the detention of some would be open-ended as the
United States tried to build a case against them."); Lynne Sladky, Associated Press, Jan.
22, 2002 ("Marine Brig. Gen. Mike Lehnert, who is in charge of the detention mission,
defended the temporary cells where detainees are being held [...] 'We have to look at
Camp X-ray as a work in progress [...]' Lehnert told CNN. Lehnert said plans are to
build a more permanent prison 'exactly in accordance with federal prison standards'");
John Mintz, "Extended Detention in Cuba Mulled," *Washington Post*, February 13, 2002.
("As the Bush Administration nears completion of new rules for conducting military
trials of foreign detainees, U.S. officials say they envision the naval base at Guantanamo
Bay, Cuba, as a site for the tribunals and as a terrorist penal colony for many years to
come.").

39.     According to the Department of Defense, detainees who are adjudged innocent of all
charges by a military commission may nevertheless be kept in detention at Guantánamo
indefinitely. *See* Department of Defense Press Background Briefing of July 3, 2003, at
http://www.defenselink.mil/transcripts/2003/tr20030703-0323.html.

40.     Counsel for Respondents has consistently maintained that the United States may hold the
detained Petitioners under their current conditions indefinitely. *See In re Guantánamo
Detainee Cases*, Nos. 02-CV-0299 (CKK), *et al.*, (D.D.C.), Tr. of Dec. 1, 2004 Oral
Argument on Motion to Dismiss at 22-24, statements of Principle Deputy Associate Att'y

Gen. Brian Boyle; *see also* Dana Priest, "Long-Term Plan Sought for Terror Suspects," *Washington Post*, Jan. 2, 2005, at A1.

## Rendition

41.    During interrogations, detainees have also been threatened with rendition or transfer to countries that permit indefinite detention without charge or trial and/or routinely practice torture. Upon information and belief, the United States has secretly transferred detainees to such countries without complying with the applicable legal requirements for extradition. This practice, known as "extraordinary rendition," is used to facilitate interrogation by subjecting detainees to torture. *See* Jane Mayer, "Outsourcing Torture: The Secret History of American's "Extraordinary Rendition" Program, *The New Yorker*, Feb. 14, 2005, at 106.

42.    The U.S. government's practice of extraordinary rendition has been well documented by American and international news organizations, including, *inter alia*, the *Washington Post*, *The Los Angeles Times*, and the British Broadcasting Corporation (the "BBC"). According to news accounts:

> Since September 11, the U.S. government has secretly transported dozens of people suspected of links to terrorists to countries other than the United States bypassing extradition procedures and legal formalities, according to Western diplomats and intelligence source. The suspects have been taken to countries . . . whose intelligence services have close ties to the CIA and where they can be subjected to interrogation tactics -- including torture and threats to families -- that are illegal in the United States, the sources said. In some cases, U.S. intelligence agents remain closely involved in the interrogations, the sources said.

Rajiv Chanrasekaran & Peter Finn, "U.S. Behind Secret Transfer of Terror Suspects," *Washington Post*, Mar. 11, 2002, at A1; *see also* Dana Priest, "Long Term Plan Sought for Terror Suspects," *Washington Post*, Jan. 2, 2005, at A1 ("The transfers, called 'renditions,' depend on arrangements between the United States and other countries, such

as Egypt ..., that agree to have local security services hold certain suspects in their facilities for interrogation by CIA and foreign liaison officers.").

## IV.

## CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF
### (COMMON LAW DUE PROCESS AND DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES - UNLAWFUL DEPRIVATION OF LIBERTY)

43.    Petitioner incorporates by reference all preceding paragraphs as if set forth fully herein.

44.    By the actions described above, including subjecting Petitioner to a Combatant Status Review Tribunal, Respondents, acting under color of law, have violated and continue to violate the common law principles of due process as well the Due Process Clause of the Fifth Amendment to the Constitution of the United States.  President Bush has ordered the prolonged, indefinite, and arbitrary detention of individuals, without due process of law, and the remaining Respondents have implemented those orders.  Respondents' actions deny him the process accorded to persons seized and detained by the United States military in times of armed conflict as established by, *inter alia*, the Uniform Code of Military Justice, Army Regulation 190-8, Articles 3 and 5 of the Third and Fourth Geneva Conventions, and customary international law as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

45.    To the extent that Petitioner's detention purports to be authorized by the Executive Order, that Order violates the Fifth Amendment on its face and as applied to Petitioner, and therefore also violates 28 U.S.C. § 2241 (c)(3).

46.   To the extent that Petitioner's detention is without basis in law and violates the common law principles of due process embodied in 28 U.S.C. § 2241 (c)(1), Petitioner's detention is unlawful.

47.   Accordingly, Petitioner is entitled to habeas, declaratory, and injunctive relief, as well as any other relief the court may deem appropriate.

SECOND CLAIM FOR RELIEF
(DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES - UNLAWFUL CONDITIONS OF CONFINEMENT)

48.   Petitioner incorporates by reference all preceding paragraphs as if set forth fully herein.

49.   By the actions described above, Respondents, acting under color of law, have violated and continue to violate the right of Petitioner to be free from unlawful conditions of confinement, in violation of the Due Process Clause of the Fifth Amendment to the Constitution of the United States.

50.   Accordingly, Petitioner is entitled to declaratory and injunctive relief as well as any other relief the court may deem appropriate.

THIRD CLAIM FOR RELIEF
(GENEVA CONVENTIONS - ARBITRARY DENIAL OF DUE PROCESS)

51.   Petitioner incorporates by reference all preceding paragraphs as if set forth fully herein.

52.   By the actions described above, Respondents, acting under color of law, have denied and continue to deny Petitioner the process accorded to persons seized and detained by the United States military in times of armed conflict as established by specific provisions of the Third and Fourth Geneva Conventions.

53.   Violations of the Geneva Conventions are direct treaty violations and are also violations of customary international law, and constitute an enforceable claim under 28 U.S.C. § 2241 (c)(3).

54.     Respondents are liable for this conduct described above, insofar as they set the conditions, directly and/or indirectly facilitated, ordered, acquiesced, confirmed, ratified, and/or conspired to violate the Geneva Conventions.

55.     Accordingly, Petitioner is entitled to habeas, declaratory, and injunctive relief, as well as any other relief the court may deem appropriate.

### FOURTH CLAIM FOR RELIEF
### (INTERNATIONAL HUMANITARIAN AND HUMAN RIGHTS LAW - ARBITRARY DENIAL OF DUE PROCESS)

56.     Petitioner incorporates by reference all preceding paragraphs as if set forth fully herein.

57.     By the actions described above, Respondents have denied and continue to deny Petitioner the due process accorded to persons seized and detained by the United States military in times of armed conflict as establish by customary international humanitarian and human rights law as reflected, expressed, and defined in multilateral treaties and other international instruments and domestic judicial decisions, and other authorities.

58.     Accordingly, Petitioner is entitled to habeas, declaratory, and injunctive relief, as well as any other relief the court may deem appropriate.

### FIFTH CLAIM FOR RELIEF
### (ALIEN TORT STATUTE - TORTURE)

59.     Petitioner incorporates by reference all preceding paragraphs as if set forth fully herein.

60.     By the actions described above, the Respondents directed, ordered, confirmed, ratified, and/or conspired to bring about acts that deliberately and intentionally inflicted severe physical and psychological abuse and agony upon Petitioner in order to obtain coerced information or confessions from him, punish or intimidate Petitioner, or for other purposes. Among other abuses, Petitioner has been held in conditions of isolation; placed in constant vulnerability to repeated interrogation and severe beatings; kept in cages with no privacy; shackled with heavy chains and irons; placed in solitary confinement for

minor rule infractions for prolonged periods of time; interrogated while shackled and chained in painful positions; exposed to extremes of temperature; subjected to violent behavior or the threat of violence; sexually humiliated; denied access to counsel and family; deprived of adequate medical care; and subjected to repeated psychological abuse.

61.    The acts described herein constitute torture in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violated customary international law prohibiting torture as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

62.    Respondents are liable for said conduct because they directed, ordered, confirmed, ratified, and/or conspired together and with others to commit the acts of torture against Petitioner.

63.    Petitioner was forced to suffer severe physical and psychological abuse and agony and is entitled to habeas, declaratory, and injunctive relief, and other relief to be determined at trial.

SIXTH CLAIM FOR RELIEF
(ALIEN TORT STATUTE - WAR CRIMES)

64.    Petitioner incorporates by reference all preceding paragraphs as if set forth fully herein.

65.    By the actions described above, Respondents' acts directing, ordering, confirming, ratifying, and/or conspiring to bring about the torture and other inhumane treatment of Petitioner constitute war crimes and/or crimes against humanity in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violated, among others, the Fourth Geneva Convention, Common Article III of the Geneva Conventions and Additional Protocols I and II of the Geneva Conventions as well as customary

19

international law prohibiting war crimes as reflected, expressed, and defined in other multilateral treaties and international instruments, international and domestic judicial decision, and other authorities.

66. As a result of Respondents' unlawful conduct, Petitioner has been and is forced to suffer severe physical and psychological abuse and agony, and is therefore entitled to habeas, declaratory, and injunctive relief, and such other relief as the court may deem appropriate.

SEVENTH CLAIM FOR RELIEF
(ALIEN TORT STATUTE – CRUEL, INHUMAN OR DEGRADING TREATMENT)

67. Petitioner incorporates by reference all preceding paragraphs as if set forth fully herein.

68. The acts described herein had the intent and the effect of grossly humiliating and debasing Petitioner, forcing him to act against his will and conscience, inciting fear and anguish, and breaking his physical or moral resistance.

69. The acts described herein constitute cruel, inhuman or degrading treatment in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violated customary international law prohibiting cruel, inhuman or degrading treatment as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

70. Respondents are liable for said conduct in that they directed, ordered, confirmed, ratified, and/or conspired together and with others to cause the cruel, inhuman or degrading treatment of Petitioner.

71. Petitioner was forced to suffer severe physical and psychological abuse and agony and is entitled to declaratory and injunctive relief, as well as other relief to be determined at trial.

### EIGHTH CLAIM FOR RELIEF
### (ALIEN TORT STATUTE -
### ARBITRARY ARREST AND PROLONGED ARBITRARY DETENTION)

72.    Petitioner incorporates by reference all preceding paragraphs as if set forth fully herein.

73.    The acts described herein constitute arbitrary arrest and detention of Petitioner in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violated customary international law prohibiting arbitrary detention as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

74.    Respondents are liable for said conduct in that they directed, ordered, confirmed, ratified, and/or conspired together and with others to bring about the arbitrary arrest and prolonged arbitrary detention of Petitioner in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violated customary international law prohibiting arbitrary arrest and prolonged arbitrary detention as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

75.    As a result of Respondents' unlawful conduct, Petitioner has been and is deprived of his freedom, separated from his family, and forced to suffer severe physical and mental abuse, and is therefore entitled to habeas, declaratory, and injunctive relief, and such other relief as the court may deem appropriate.

### NINTH CLAIM FOR RELIEF
### (ALIEN TORT STATUTE- ENFORCED DISAPPEARANCE)

76.    Petitioner incorporates by reference all preceding paragraphs as if set forth fully herein.

77.    By the actions described above, the Respondents directed, ordered, confirmed, ratified, and/or conspired to bring about the enforced disappearance of Petitioner in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violated

customary international law prohibiting enforced disappearances as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

78.   As a result of Respondents' unlawful conduct, Petitioner has been and continues to be deprived of his freedom, separated from his family, and forced to suffer severe physical and mental abuse, and is therefore entitled to declaratory and injunctive relief and such other relief as the court may deem appropriate.

## TENTH CLAIM FOR RELIEF
### (ARTICLE II OF THE UNITED STATES CONSTITUTION-UNLAWFUL DETENTION)

79.   Petitioner incorporates by reference all preceding paragraphs as if set forth fully herein.

80.   Petitioner is not, nor has he ever been, an enemy alien, lawful or unlawful belligerent, or combatant of any kind.  The Executive lacks the authority to order or direct military officials to detain civilians who are seized far from the theater of war or occupied territory or who were not "carrying a weapon against American troops on a foreign battlefield." *Hamdi v. Rumsfeld*, 542 U.S. 507, 522, 124 S. Ct. 2633, 2642 n.1 (2004).

81.   By the actions described above, President Bush has exceeded and continues to exceed the Executive's authority under Article II of the United States Constitution by authorizing, ordering and directing that military officials seize Petitioner and transfer him to military detention, and by authorizing and ordering their continued military detention at Guantánamo.  All of the Respondents acted and continue to act without lawful authority by directing, ordering, and/or supervising the seizure and military detention of Petitioner.

82.   The military seizure and detention of Petitioner by the Respondents is *ultra vires* and illegal because it violates Article II of the United States Constitution.  To the extent that the Executive asserts that Petitioner's detention is authorized by the Executive Order, that

Order exceeds the Executive's authority under Article II and is *ultra vires* and void on its face and as applied to Petitioner.

83.   To the extent that Respondents assert that their authority to detain Petitioner derives from a source other than the Executive Order, including without limitation the Executive's inherent authority to conduct foreign affairs or to serve as Commander-in-Chief of the U.S. Armed Forces, whether from Article II of the Constitution or otherwise, Respondents lack that authority as a matter of fact and law.

84.   Accordingly, Petitioner is entitled to habeas, declaratory, and injunctive relief, as well as any other relief the court may deem appropriate.

ELEVENTH CLAIM FOR RELIEF
(VIOLATION OF THE APA - ARBITRARY AND CAPRICIOUS UNLAWFUL DETENTION)

85.   Petitioner incorporates by reference all preceding paragraphs as if set forth fully herein.

86.   Army Regulation 190-8 prohibits the detention of civilians who were seized away from the field of battle or outside occupied territory or who were not engaged in combat against the United States. *See, e.g.*, Army Reg. 190-8 at 1-6(g) ("Persons who have been determined by a competent tribunal not to be entitled to prisoner of war status may not be executed, imprisoned, or otherwise penalized without further proceedings to determine what acts they have committed and what penalty should be imposed.").

87.   By arbitrarily and capriciously detaining Petitioner in military custody for more than six years in the manner described above, Respondents have acted and continue to act *ultra vires* and unlawfully in violation of the Administrative Procedures Act, 5 U.S.C. § 706(2).

88.   Accordingly, Petitioner is entitled to habeas, declaratory, and injunctive relief, as well as any other relief the court may deem appropriate.

## TWELFTH CLAIM FOR RELIEF
### (VIOLATION OF THE APA - ARBITRARY AND CAPRICIOUS DENIAL OF DUE PROCESS)

89.     Petitioner incorporates by reference all preceding paragraphs as if set forth fully herein.

90.     By the actions described above, Respondents, acting under color of law, have arbitrarily and capriciously denied and continue to deny Petitioner the process accorded to persons seized and detained by the United States military in times of armed conflict as established by Army Regulation 190-8 in violation of the Administrative Procedures Act, 5 U.S.C. § 706(2).

91.     Accordingly, Petitioner is entitled to habeas, declaratory, and injunctive relief as well as any other relief the court may deem appropriate.

## THIRTEENTH CLAIM FOR RELIEF
### (VIOLATION OF THE APA – TORTURE AND CRUEL, INHUMAN OR DEGRADING TREATMENT)

92.     Petitioner incorporates by reference all preceding paragraphs as if set forth fully herein.

93.     By the actions described above, the Respondents have acted and continue to act arbitrarily and capriciously by directing, ordering, confirming, ratifying, and/or conspiring to unlawfully subject Petitioner to torture and/or cruel, inhuman or degrading treatment in violation of Army Regulation 190-8 and the Administrative Procedures Act, 5 U.S.C. § 706(2).

94.     Accordingly, Petitioner is entitled to habeas, declaratory, and injunctive relief, as well as any other relief the court may deem appropriate.

## FOURTEENTH CLAIM FOR RELIEF
### (VIOLATION OF THE RIGHT TO COUNSEL AND TO ACCESS TO THE COURTS)

95.     Petitioner incorporates by reference all preceding paragraphs as if set forth fully herein.

96.     Respondents, purportedly acting from a concern for national security, consistently have contrived to intrude upon Petitioner's right to consult with counsel by conditioning

counsel's access to Petitioner on unreasonable terms, including classification/declassification procedures, all in violation of Petitioner's attorney-client privilege, his work product privilege, and the Fifth and Sixth Amendments to the U.S. Constitution.

97.    Accordingly, Petitioner is entitled to habeas, declaratory, and injunctive relief, as well as any other relief the court may deem appropriate.

### FIFTEENTH CLAIM FOR RELIEF
### (CONVENTION AGAINST TORTURE AND
### CONVENTION RELATING TO THE STATUS OF REFUGEES - RENDITION)

98.    Petitioner incorporates by reference all preceding paragraphs as if set forth fully herein.

99.    Upon information and belief, Petitioner is at risk of being rendered or expelled without lawful procedures to a country that engages in torture. The transfer of the Petitioner to a country that creates a foreseeable and direct risk that he will be subjected to torture constitutes a direct violation of Petitioner's rights under the Covenant Against Torture and the 1954 Convention Relating to the Status of Refugees, 19 U.S.T. 6259, 189 U.N.T.S. 150 *entered into force* Apr. 22, 1954.

100.    Accordingly, Petitioner is entitled to declaratory and injunctive relief, as well as any other relief the court may deem appropriate.

### SIXTEENTH CLAIM FOR RELIEF
### (ALIEN TORT STATUTE- RENDITION)

101.    Petitioner incorporates by reference all preceding paragraphs as if set forth fully herein.

102.    Upon information and belief, Petitioner is at risk of being rendered or expelled without lawful procedures to a country that engages in torture. The transfer of the Petitioner to a country that creates a foreseeable and direct risk that he will be subjected to torture constitutes a violation of Petitioner's rights under customary international law, which may be vindicated under the Alien Tort Statute.

103.    Accordingly, Petitioner is entitled to declaratory and injunctive relief, as well as any other relief the court may deem appropriate.

## V.

## PRAYER FOR RELIEF

WHEREFORE, Petitioner prays for relief as follows:

1.    Grant the Writ of Habeas Corpus and order Respondent to release Petitioner from his current unlawful detention;

2.    Order that Petitioner be brought before the Court or before a Magistrate Judge assigned by the Court to conduct proceedings under the supervision of the Court to vindicate his rights;

3.    Order that Petitioner cannot be transferred to any other country without the specific written agreement of Petitioner and Petitioner's counsel while this action is pending;

4.    Order that Petitioner cannot be delivered, returned, or rendered to a country where there is a foreseeable and imminent risk that Petition will be subject to torture;

5.    Order Respondents to allow counsel to meet and confer with Petitioner, in private and unmonitored attorney-client conversations;

6.    Order Respondents to cease all interrogations of Petitioner, direct or indirect, while this litigation is pending;

7.    Order Respondents to cease all acts of torture and cruel, inhuman and degrading treatment of Petitioner;

8.    Order and declare the Executive Order of November 13, 2001 is *ultra vires* and unlawful in violation of Article II of the United States Constitution, the Fifth Amendment to the U.S. Constitution, the Uniform Code of Military Justice, the Administrative Procedures Act, 5 U.S.C. § 702, the treaties of the United States and customary international law;

9.    Order and declare that the prolonged, indefinite, and restrictive detention of Petitioner without due process is arbitrary and unlawful and a deprivation of liberty without due process in violation of the common law principles of due process, the Due Process Clause of the Fifth Amendment to the United States Constitution, the regulations of the United States military, the treaties of the United States, and customary international humanitarian law; and

10.    Grant such other relief as the Court may deem necessary and appropriate to protect Petitioner's rights under the common law, the United States Constitution, federal statutory law, and international law.

///

///

///

Dated:      June 24, 2008                    Respectfully submitted,

Counsel for Petitioners:

_____
Clive A. Stafford Smith (Louisiana Bar No. 14444)
Zachary Katznelson (California Bar No. 209489)
Cori Crider (Member New York Bar)
Reprieve
PO Box 52742
London EC4P 4WS
United Kingdom
011 44 207 353 4640 (ph)
011 44 207 353 4641 (fax)
clivess@mac.com
zachary@reprieve.org.uk
cori@reprieve.org.uk

_____
David S. Marshall (Washington Bar No. 11716)
1001 Fourth Avenue, 44th Floor
Seattle, WA 98154-1192
Telephone: (206) 826-1400
Facsimile: (206) 389-1708
dmarshall@DavidSMarshall.com

EXHIBIT A

DO NOT WRITE BEYOND HEAVY LINES

GUAN-2008-T 00657

إلى المحامي: كلا يف        بعد التحية.
أبلغكم أنا سيد أحمد عبد الله الحكيمي        لهني الجنسية        رقم ٣٠
مسجونه تحت قبضة الحكومة الأمريكية من غير أي قضية
وأريد منكم محامي من أجلي حتى أستطيع أن أستشيره في القضية
والعكاين ذلك أمريكية وموظفو الحدود والمقاتل أو ممكنه CSRT
وأضاف الذي لذية الحكومة الأمريكية أصدرها وأمر أن ماك كل مجتهد له أحقية
في المعارضة على هذه المحكمة ، من مسأله منكم مراجعها ووضع إعتقا تلية
وأتمنى أن تصل اليك هذه الرسالا في أقرب وقت وإرسال الجواب
في أقرب وقت أو إعما يله

« ملاحظة »

٣٠

شني الجنسية من مواليد السعودية -جدة ؟؟

RECEIVED
MAY 0 8 2008
BY:

Reverse of DA FORM 2667-R, May 82

**EXHIBIT B**
(Translation of Exhibit A)

Dear Lawyer Clive

Greetings.

I am Ahmed Mohammed Abdullah Al Hakimi, a Yemeni national with No. 30 detained by the US at Guantanamo without any charge.

I would like to have a lawyer from your office to be able to consult with, regarding the US trials and "enemy combatant" and the CSRT, especially due to the US government insisting on a matter that all detainees have their own rights, in opposition to the trial and in regards to the status of detainees by the Review Court.

I hope my letter reaches you as soon as possible and I am looking forward to receiving a reply from you as soon as possible.

Thank you. Detainee No.30.

"Note"

[Redacted]

A Yemeni national born in Saudi Arabia, Jeddah.

## <u>CERTIFICATION OF REPRESENTATION WITHOUT COMPENSATION</u>

Pursuant to L. Cv. R. 83.2(g), I hereby certify that I am a member in good standing of the New York Bar, and that I am representing Petitioner without compensation.

Dated:  June 24, 2008

Cori Crider
Member New York Bar
Reprieve
PO Box 52742
London EC4P 4WS
United Kingdom
011 44 207 353 4640 (ph)
011 44 207 353 4641 (fax)
cori@reprieve.org.uk

## CERTIFICATION OF REPRESENTATION WITHOUT COMPENSATION

Pursuant to L. Cv. R. 83.2(g), I hereby certify that I am a member in good standing of the

Louisiana Bar, and that I am representing Petitioner without compensation.

Dated:  June 24, 2008

Clive A. Stafford Smith
Louisiana Bar No. 14444
Reprieve
PO Box 52742
London EC4P 4WS
United Kingdom
011 44 207 353 4640 (ph)
011 44 207 353 4641 (fax)
clivess@mac.com

## CERTIFICATION OF REPRESENTATION WITHOUT COMPENSATION

Pursuant to L. Cv. R. 83.2(g), I hereby certify that I am a member in good standing of the California Bar, and that I am representing Petitioner without compensation.

Dated: June 24, 2008

Zachary Katznelson
Reprieve
PO Box 52742
London EC4P 4WS
United Kingdom
011 44 207 353 4640 (ph)
011 44 207 353 4641 (fax)
zachary@reprieve.org.uk

## <u>CERTIFICATION OF REPRESENTATION WITHOUT COMPENSATION</u>

Pursuant to L. Cv. R. 83.2(g), I hereby certify that I am a member in good standing of the

Washington State Bar, and that I am representing Petitioner without compensation.

Dated: June 24, 2008

David S. Marshall (Washington Bar No. 11716)
1001 Fourth Avenue, 44th Floor
Seattle, WA 98154-1192
Telephone: (206) 826-1400
Facsimile: (206) 389-1708
dmarshall@DavidSMarshall.com

## CERTIFICATE OF SERVICE

I, Tracey McDonald, Legal Assistant, hereby certify that a true and correct copy of the

foregoing instrument has been served upon the following persons in the manner indicated below:

George W. Bush (certified mail, return receipt requested)
President of the United States
The White House
1600 Pennsylvania Ave., N.W.
Washington, D.C. 20500

Robert M. Gates (certified mail, return receipt requested)
Secretary, United States
Department of Defense
1000 Defense Pentagon
Washington, D.C. 20301-1000

Navy Rear Adm. David M. Thomas Jr.  (certified mail, return receipt requested)
Commander, Joint Task Force - GTMO
JTF-GTMO
APO AE 09360

Army Col. Bruce Vargo (certified mail, return receipt requested)
Commander, Joint Detention Operations Group - JTF-GTMO,
JTF-GTMO
APO AE 09360

Terry Henry (e-mail: terry.henry@usdoj.gov)
Senior Trial Attorney
Federal Programs Branch
Civil Division – Room 7144
Department of Justice
20 Massachusetts Avenue, NW
Washington, DC 20530

Andrew Warden (e-mail: andrew.warden@usdoj.gov)
Trial Attorney
Federal Programs Branch
Civil Division – Room 7144
Department of Justice
20 Massachusetts Avenue, NW
Washington, DC 20530

///

///

Dated:  June 24, 2008

Tracey McDonald, Legal Assistant

**I (a) PLAINTIFFS**

**DEFENDANTS**

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF
**(EXCEPT IN U.S. PLAINTIFF CASES)**

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
**(IN U.S. PLAINTIFF CASES ONLY)**
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

ATTORNEYS (IF KNOWN)

---

**II.  BASIS OF JURISDICTION**

(PLACE AN x IN ONE BOX ONLY)

☐ 1  U.S. Government
Plaintiff

☐ 3  Federal Question
(U.S. Government Not a Party)

☐ 2 U.S. Government
Defendant

☐ 4 Diversity
(Indicate Citizenship of
Parties in item III)

**III CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN x IN ONE BOX
FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | 1 | 1 | Incorporated or Principal Place of Business in This State | 4 | 4 |
| Citizen of Another State | 2 | 2 | Incorporated and Principal Place of Business in Another State | 5 | 5 |
| Citizen or Subject of a Foreign Country | 3 | 3 | Foreign Nation | 6 | 6 |

---

# IV.  CASE ASSIGNMENT AND NATURE OF SUIT

**(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)**

| **A.** *Antitrust* | **B.** *Personal Injury/ Malpractice* | **C.** *Administrative Agency Review* | **D.** *Temporary Restraining Order/Preliminary Injunction* |
|---|---|---|---|
| ☐ 410 Antitrust | ☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury<br>☐ 362 Medical Malpractice<br>☐ 365 Product Liability<br>☐ 368 Asbestos Product Liability | ☐ 151 Medicare Act<br><br>**Social Security:**<br>☐ 861 HIA ((1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g)<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g)<br>**Other Statutes**<br>☐ 891 Agricultural Acts<br>☐ 892 Economic Stabilization Act<br>☐ 893 Environmental Matters<br>☐ 894 Energy Allocation Act<br>☐ 890 Other Statutory Actions (If Administrative Agency is Involved) | Any nature of suit from any category may be selected for this category of case assignment.<br><br>*(If Antitrust, then A governs)* |

| **E.** *General Civil (Other)* | **OR** | **F.** *Pro Se General Civil* | |
|---|---|---|---|
| **Real Property**<br>☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent, Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property<br><br>**Personal Property**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | **Bankruptcy**<br>☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br><br>**Prisoner Petitions**<br>☐ 535 Death Penalty<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition<br><br>**Property Rights**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 840 Trademark<br><br>**Federal Tax Suits**<br>☐ 870 Taxes (US plaintiff or defendant<br>☐ 871 IRS-Third Party 26 USC  7609 | **Forfeiture/Penalty**<br>☐ 610 Agriculture<br>☐ 620 Other Food &Drug<br>☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 630 Liquor Laws<br>☐ 640 RR & Truck<br>☐ 650 Airline Regs<br>☐ 660 Occupational Safety/Health<br>☐ 690 Other<br><br>**Other Statutes**<br>☐ 400 State Reapportionment<br>☐ 430 Banks & Banking<br>☐ 450 Commerce/ICC Rates/etc.<br>☐ 460 Deportation | ☐ 470 Racketeer Influenced & Corrupt Organizations<br>☐ 480 Consumer Credit<br>☐ 490 Cable/Satellite TV<br>☐ 810 Selective Service<br>☐ 850 Securities/Commodities/ Exchange<br>☐ 875 Customer Challenge 12 USC 3410<br>☐ 900 Appeal of fee determination under equal access to Justice<br>☐ 950 Constitutionality of State Statutes<br>☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act |

| **G**. *Habeas Corpus/ 2255* | **H**. *Employment Discrimination* | **I**. *FOIA/PRIVACY ACT* | **J**. *Student Loan* |
|---|---|---|---|
| **530 Habeas Corpus-General**<br>**510 Motion/Vacate Sentence** | **442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)**<br><br>**\*(If pro se, select this deck)\*** | **895 Freedom of Information Act**<br>**890 Other Statutory Actions (if Privacy Act)**<br><br>**\*(If pro se, select this deck)\*** | **152 Recovery of Defaulted Student Loans (excluding veterans)** |

| **K**. *Labor/ERISA (non-employment)* | **L**. *Other Civil Rights (non-employment)* | **M**. *Contract* | **N**. *Three-Judge Court* |
|---|---|---|---|
| **710 Fair Labor Standards Act**<br>**720 Labor/Mgmt. Relations**<br>**730 Labor/Mgmt. Reporting & Disclosure Act**<br>**740 Labor Railway Act**<br>**790 Other Labor Litigation**<br>**791 Empl. Ret. Inc. Security Act** | **441 Voting (if not Voting Rights Act)**<br>**443 Housing/Accommodations**<br>**444 Welfare**<br>**440 Other Civil Rights**<br>**445 American w/Disabilities-Employment**<br>**446 Americans w/Disabilities-Other** | **110 Insurance**<br>**120 Marine**<br>**130 Miller Act**<br>**140 Negotiable Instrument**<br>**150 Recovery of Overpayment & Enforcement of Judgment**<br>**153 Recovery of Overpayment of Veteran's Benefits**<br>**160 Stockholder's Suits**<br>**190 Other Contracts**<br>**195 Contract Product Liability**<br>**196 Franchise** | **441 Civil Rights-Voting (if Voting Rights Act)** |

## V. ORIGIN

| 1 Original Proceeding | 2 Removed from State Court | 3 Remanded from Appellate Court | 4 Reinstated or Reopened | 5 Transferred from another district (specify) | 6 Multi district Litigation | 7 Appeal to District Judge from Mag. Judge |
|---|---|---|---|---|---|---|

## VI.  CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

| **VII. REQUESTED IN COMPLAINT** | CHECK IF THIS IS A **CLASS ACTION** UNDER F.R.C.P. 23 | **DEMAND $**<br>**JURY DEMAND:** | Check YES only if demanded in complaint<br>YES          NO |
|---|---|---|---|

| **VIII. RELATED CASE(S) IF ANY** | (See instruction)          YES          NO | If yes, please complete related case form. |
|---|---|---|

| DATE | SIGNATURE OF ATTORNEY OF RECORD |
|---|---|

### INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
#### Authority for Civil Cover Sheet

The **JS-44** civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed.  Listed below are tips for completing the civil cover sheet.  These tips coincide with the Roman Numerals on the Cover Sheet.

 **I.**    COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT  (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C.,  and 99999 if plaintiff is outside the United States.

 **III.**    CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed <u>only</u> if diversity of citizenship was selected as the Basis of Jurisdiction under Section **II**.

 **IV.**    CASE ASSIGNMENT AND NATURE OF SUIT:  The assignment of a judge to your case will depend on the category you select that best represents the <u>primary</u> cause of action found in your complaint.  You may select only <u>one</u> category.  You <u>must</u> also select <u>one</u> corresponding nature of suit found under the category of case.

 **VI.**    CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

 **VIII.**    RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

AHMED MOHAMMED ABDULLAH
AL HAKIMI )
     **Detainee, ISN 030,** )
     **Guantanamo Bay Naval Station** )
     **Guantanamo Bay, Cuba;** )
      )
     *Petitioner/Plaintiff,* )
      )
**v.** )
      )
**GEORGE W. BUSH,** )
     **President of the United States** )
     **The White House** )
     **1600 Pennsylvania Avenue, NW** )     **Civil Case No. _____**
     **Washington, D.C. 20500;** )
      )
**ROBERT GATES,** )
     **Secretary, United States** )
     **Department of Defense** )
     **1000 Defense Pentagon** )
     **Washington, D.C. 20301-1000;** )
      )
**Navy Rear Adm. David M. Thomas Jr.,** )
     **Commander, Joint Task Force - GTMO** )
     **JTF-GTMO** )
     **APO AE 09360; and** )
      )
**Army Col. Bruce Vargo ,** )
     **Commander, Joint Detention** )
       **Operations Group - JTF-GTMO,** )
     **JTF-GTMO** )
     **APO AE 09360;** )
      )
*Respondents/Defendants.* )
      )

## MEMORANDUM OF UNDERSTANDING REGARDING ACCESS TO CLASSIFIED NATIONAL SECURITY INFORMATION

     Having familiarized myself with the applicable statutes, regulations, and orders related to,

but not limited to, unauthorized disclosure of classified information, espionage and related

offenses; The Intelligence Identities Protection Act, 50 U.S.C. § 421; 18 U.S.C. § 641; 50 U.S.C. § 783; 28 C.F.R. § 17 et seq.; and Executive Order 12958;

I understand that I may be the recipient of information and documents that belong to the United States and concern the present and future security of the United States, and that such documents and information together with the methods and sources of collecting it are classified by the United States government.

In consideration for the disclosure of classified information and documents: (1) I agree that I shall never divulge, publish, or reveal either by word, conduct or any other means, such classified documents and information unless specifically authorized in writing to do so by an authorized representative of the United States government, or as expressly authorized by the Protective Order entered in the United States District Court for the District of Columbia in the case. (2) I agree that this Memorandum of Understanding and any other non-disclosure agreement signed by me will remain forever binding on me. (3) I have received, read, and understand the Protective Order entered by the United States District Court for the District of Columbia in the case captioned *In Re Guantanamo Bay Cases*, and I agree to comply with the provisions thereof.

/// 

///

///

2

Dated:     June 25, 2008                    Respectfully submitted,


David S. Marshall (Washington Bar No. 11716)
1001 Fourth Avenue, 44th Floor
Seattle, WA 98154-1192
Telephone: (206) 826-1400
Facsimile: (206) 389-1708
dmarshall@DavidSMarshall.com

3

## ACKNOWLEDGMENT

The undersigned hereby acknowledges that he has read the Protective Order entered in the United States District Court for the District of Columbia in the case captioned In Re Guantanamo Bay Cases (which includes the captioned cases), understands its terms, and agrees to be bound by each of those terms.  Specifically, and without limitation, the undersigned agrees not to use or disclose any protected information or documents made available to him other than as provided by the Protective Order.  The undersigned acknowledges that his duties under the Protective Order shall survive the termination of this case and are permanently binding, and that failure to comply with the terms of the Protective Order may result in the imposition of sanctions by the Court.

DATED:   June 25, 2008                    Respectfully submitted,

David S. Marshall (Washington Bar No. 11716)
1001 Fourth Avenue, 44th Floor
Seattle, WA 98154-1192
Telephone: (206) 826-1400
Facsimile: (206) 389-1708
dmarshall@DavidSMarshall.com

## ACKNOWLEDGMENT

The undersigned hereby acknowledges that to the best of his knowledge after reasonable inquiry, the source of funds to pay counsel any fees or reimbursement of expenses are not funded directly or indirectly by persons or entities the counsel believes are connected to terrorism or the product of terrorist activities, including "Specially Designated Global Terrorists," identified pursuant to Exec. Order No. 13,224, 66 Fed. Reg. 49,079 (Sept. 23, 2001) or Exec. Order No. 12,947, 60 Fed. Reg. 5079 (Jan. 23, 1995), and (b) counsel has complied with ABA Model Rule 1.8(f).

DATED:   June 25, 2008

Respectfully submitted,

David S. Marshall (Washington Bar No. 11716)
1001 Fourth Avenue, 44th Floor
Seattle, WA 98154-1192
Telephone: (206) 826-1400
Facsimile: (206) 389-1708
dmarshall@DavidSMarshall.com

## CERTIFICATE OF SERVICE

I, Tracey McDonald, Legal Assistant, hereby certify that a true and correct copy of the foregoing instrument has been served upon the following persons in the manner indicated below:

George W. Bush (certified mail, return receipt requested)
President of the United States
The White House
1600 Pennsylvania Ave., N.W.
Washington, D.C. 20500

Robert M. Gates (certified mail, return receipt requested)
Secretary, United States
Department of Defense
1000 Defense Pentagon
Washington, D.C. 20301-1000

Navy Rear Adm. David M. Thomas Jr.  (certified mail, return receipt requested)
Commander, Joint Task Force - GTMO
JTF-GTMO
APO AE 09360

Army Col. Bruce Vargo (certified mail, return receipt requested)
Commander, Joint Detention Operations Group - JTF-GTMO,
JTF-GTMO
APO AE 09360

Terry Henry (e-mail: terry.henry@usdoj.gov)
Senior Trial Attorney
Federal Programs Branch
Civil Division – Room 7144
Department of Justice
20 Massachusetts Avenue, NW
Washington, DC 20530

Andrew Warden (e-mail: andrew.warden@usdoj.gov)
Trial Attorney
Federal Programs Branch
Civil Division – Room 7144
Department of Justice
20 Massachusetts Avenue, NW
Washington, DC 20530

///

///

Dated:  June 25, 2008

Tracey McDonald, Legal Assistant