APPROVED FOR PUBLIC FILING BY THE CSO

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **AHMED MOHAMMED ABDULLAH AL HAKIMI,** | ) ) | |
| *Petitioner/Plaintiff*, | ) ) | |
| v. | ) ) | No.  08-cv-1111 (EGS) |
| **GEORGE W. BUSH, et al.,** | ) ) ) | |
| *Respondents/Defendants*. | ) ) | |

**PETITIONER'S STATUS REPORT TO THE COURT**

Petitioner Ahmed Mohammed Abdullah Al Hakimi, ISN 030, submits this status report to the Court in compliance with the Court's order of July 10, 2008.

Mr. Al Hakimi is a citizen of Yemen born in Saudi Arabia.  Counsel has met Mr. Al Hakimi once in Guantanamo Bay – on July 2, 2008.  Notes from that meeting are not yet declassified; therefore, all information contained here is from unclassified documents released by respondents in 2006 in response to a FOIA request by the Associated Press.

According to unclassified records of Mr. Al Hakimi's Combatant Status Review Tribunal and Administrative Review Boards, Mr. Al Hakimi was taken captive December 15, 2001 soon after crossing the Pakistani-Afghan border and was transferred to United States forces on December 26, 2001.  He arrived at Guantanamo Bay Naval Station on approximately January 16, 2002 – just days after the first prisoners arrived there.  Mr. Al Hakimi's low Internment Serial Number (030) confirms that he is one of the longest-imprisoned men at Guantanamo.

1

APPROVED FOR PUBLIC FILING BY THE CSO

This petition for habeas corpus was filed June 30, 2008, after counsel received a letter from Mr. Al Hakimi requesting that a case be brought on his behalf. The government has not yet filed a return and has not filed any motion.

**Identity Dispute**

Respondents have indicated that they intend to move to dismiss this petition because it has recently decided that one "Ahmed Omar," named as a petitioner in *Mohammon, et al. v. Bush, et al.*, Cause No. 05-cv-2386 (RBW/RMU), is Mr. Al Hakimi. The government submits that this case should be dismissed because it was not the first filed for Mr. Al Hakimi.

Mr. Al Hakimi will oppose any motion to dismiss for several reasons.

First, it is not clear that Mr. Al Hakimi is the person identified as "Ahmed Omar." The government has not provided counsel with any evidence that they are one and the same.

Second, for the past two years, Respondent denied that the "Ahmed Omar" moniker in *Mohammon* referred to any petitioner in Guantánamo. *See* Respondents' Status Report and Response to Court's June 27, 2006 Order, Dkt. No. 109, 109-1 (Exhibit A), 05-CV-2386 (RBW) ("Mere similarities in name or nationality between the allegations in the petition and [the list of Guantanamo prisoners produced under the Freedom of Information Act] are often insufficient to determine conclusively the identity of the petitioners in this case.") The government argued against entering the protective order for any petitioner whose identity it disputed: "Unless and until counsel for petitioners provides respondents with convincing evidence that will determine conclusively the detainee for whom it is intended that habeas relief is sought, the Protective Order should not be made applicable to the petitioners listed in Exhibit A." *Id.* How counsel was meant to establish the identity of a client who was barred from seeing an attorney was unclear: without the Court's entry of the Protective order, counsel would not be able to visit or to

APPROVED FOR PUBLIC FILING BY THE CSO

send confidential mail to a prisoner. Without that communication, no attorney-client relationship could exist.

The *Mohammon* case was stayed shortly before the petitioners' reply was due. Consequently, no protective order was applied to "Ahmed Omar" in that case. No procedures were established to settle identity disputes, and counsel in *Mohammon* could hardly track down "Ahmed Omar" in his cell at Guantanamo and to undertake to represent him. Hence, even if Mr. Al Hakimi was the person intended by the name "Ahmed Omar" in the *Mohammon* petition, he derived absolutely no benefit from that, owing partly to the government's demanding "convincing evidence" of his identity but not permitting counsel the access necessary to obtain such evidence.

Presumably despairing that his earlier request for help via another prisoner had been heard, Mr. Al Hakimi wrote directly to undersigned counsel this year, asking that a lawyer be permitted to represent him. Counsel filed this habeas petition; the Protective Order was promptly entered; and Mr. Al Hakimi was able to see an attorney at last.

To this day, there is no Protective Order entered for Mr. Al Hakimi in *Mohammon*. While the Order may eventually be entered on behalf of *Mohammon's* over 100 consolidated petitioners, the case is massive, and may take considerable time to lumber forth. Meanwhile, the Protective Order is already in place in this case, and counsel has visited Mr. Al Hakimi under its auspices. In light of the Supreme Court's admonition in *Boumediene* that these cases should proceed expeditiously, the balance of equities favors leaving Mr. Al Hakimi in a case with the Protective Order already entered intact. Having claimed for two years that Mr. Al Hakimi had no right to proceed with a lawyer under *Mohammon*, the government's request to put him there, moving Petitioner two steps back along his road to freedom.

3

APPROVED FOR PUBLIC FILING BY THE CSO

Finally, Judge Urbina, by virtue the *Mohammon* case alone, with dozens of petitioners, has more than his share of Guantanamo habeas petitioners. The distribution among the judges of the court will be less unbalanced if this case proceeds before Judge Sullivan.

## Proposed Schedule

### Provision of 30 Days' Notice of Transfer

First, we propose the Court order the government not to transfer Mr. Al Hakimi to any third country without giving petitioner's counsel and the Court thirty days' notice of the country to which it intends to transfer him. Just as the Executive should not "have the power to switch the Constitution on or off at will" by putting prisoners in a place where it has total control but has surrendered formal sovereignty, *Boumediene v. Bush*, 553 U.S. ___, (2008), slip op. at 35 (2008), it should not have the power to switch off their freshly-proclaimed habeas corpus rights by moving them to a place where prisoners may find themselves in danger or in proxy detention. However, Petitioner is willing to waive notice for any transfer to Yemen (Mr. Al Hakimi's country of citizenship) or Saudi Arabia (where he was born and raised); he would welcome return to either country at any time without delay.

On August 17, 2006, the Court issued a similar order in *Abdul Razakah v. Bush*, No. 05-2370 (EGS)**.** On July 11, 2008, without formal motion or briefing, Judge Hogan granted thirty days' notice to any petitioner who requests it, in the cases in which he is playing a coordinating role, Misc. No. 08-442 (TFH). Notice is of virtually no additional burden to the government—but potentially of grave importance to the Petitioner. We respectfully request that this Court follow Judge Hogan's lead.

### Filing of Return

We ask the Court to order the government to file its return by July 21, 2008, and to limit that return to the evidence presented in 2004 at Mr. Al Hakimi's Combatant Status Review

4

**APPROVED FOR PUBLIC FILING BY THE CSO**

Tribunal. (The Summary of Evidence for the CSRT was prepared October 6, 2004. We presume the CSRT occurred soon after that.) That is the evidence the government contended before Judge Green on August 31, 2004, would "supply the complete factual record justifying" the conclusion that a prisoner was an enemy combatant. The government should have the entire CSRT record already compiled and in its possession.

We ask the court not to permit the government to expand the return to encompass more than the CSRT record. The government should not be allowed to try to come up with reasons to justify imprisonment retroactively; the issue is whether there was authorization to detain the Petitioner *at the time* he entered US custody. Judge Hogan, at his July 8th status conference in the cases he is coordinating, said he was inclined not to permit the government to expand the record for purposes of this determination, and he has since required the government to seek leave to do so. Similarly, Mr. Al Hakimi should be able to defend himself against the allegations made to justify picking him up in the first place

Even if the Court did not limit the government's return to the evidence presented at the CSRT, it should order the government to give counsel for Mr. Al Hakimi access to all of the CSRT evidence (classified and unclassified) by July 21, 2008. Any additional information permitted by the Court would then be due by July 28, 2008. These deadlines would enable counsel to begin preparing a traverse, evidence and argument on the merits of the petition. Again, *Boumediene's* command of swiftness supports giving counsel access to the evidence against Mr. Al Hakimi as soon as possible. The government has had six and a half years to compile evidence against Mr. Al Hakimi. Any further delay would be unjust.

**Exculpatory Information**

While the government's authority to *detain* prisoners turned on facts available at the time Mr. Al Hakimi was taken into custody, the government's obligation to ensure it is not holding

APPROVED FOR PUBLIC FILING BY THE CSO

innocents continues up to today. Thus, by July 28, 2008, the government should provide counsel with any exculpatory information the government may possess, classified or unclassified, no matter when it was acquired.

### No Redaction Should Be Permitted

Respondents should be ordered to produce all evidence in unredacted form to allow counsel to properly evaluate the nature of the evidence. Petitioners' counsel has Secret clearance (and as necessary will request Top-Secret clearance) and has access to the secure facility. Accordingly there is no need for the government to redact any information in this case. Should the government desire to redact information, Petitioner requests that the Court order the Government to move the Court for express permission to redact said information, providing the Court with the specific reasons the proposed redactions are necessary.

### Filing of Traverse

We propose the Court order Mr. Al Hakimi's counsel to examine the return and any exculpatory information at the secure facility within three weeks of the government's making it available there. (We will attempt to get there within less time, but the complications of traveling from London and Seattle make us reluctant to propose a shorter period for an order, at least not until we know the date the evidence will be available to us.)

After viewing the government's evidence, we will travel to Guantanamo to meet with Mr. Al Hakimi. We propose the Court require us to file either a traverse or a notice that we did not intend to file one within one week of returning to our offices from that visit.

### Subsequent Status Reports

We propose that one week after that filing, the parties be required to submit status reports setting forth their proposals for further proceedings. We suggest this course in line with the principle that habeas corpus proceedings are flexible and are to be tailored to the particulars of

6

**APPROVED FOR PUBLIC FILING BY THE CSO**

the case. *See Roberts v. Reilly*, 116 U.S. 80, 93, 6 S.Ct. 291, 29 L.Ed. 544 (1885) ("[T]he summary character of proceedings under the writ of habeas corpus [is] not admitting, in favor of the liberty of the citizen, the delays usually and necessarily attending ordinary litigations [but] confers upon … the judge … discretion to [employ] such regulations and orders as may seem best adapted to secure the speediest and most effective justice").

APPROVED FOR PUBLIC FILING BY THE CSO

**Discovery**

We do not ask the Court to adopt a discovery plan at this point; rather, we propose that when Mr. Al Hakimi perceives a need for discovery, counsel will file an appropriate motion.

Dated:   July 14, 2008                    Respectfully submitted,

*[signature]*

Clive A. Stafford Smith (Louisiana Bar No. 14444)
Zachary Katznelson (California Bar No. 209489)
Cori Crider (Member New York Bar)
Reprieve
PO Box 52742
London EC4P 4WS
United Kingdom
011 44 207 353 4640 (ph)
011 44 207 353 4641 (fax)
clivess@mac.com
zachary@reprieve.org.uk
cori@reprieve.org.uk

David S. Marshall (Washington Bar No. 11716)
1001 Fourth Avenue, 44th Floor
Seattle, WA 98154-1192
Telephone: (206) 826-1400
Facsimile: (206) 389-1708
dmarshall@DavidSMarshall.com

*Counsel for Petitioner*

**APPROVED FOR PUBLIC FILING BY THE CSO**

## **CERTIFICATE OF SERVICE**

    I hereby certify that I have caused a copy to be served upon counsel for Respondents by filing this document directly on ECF, pursuant to approval by the Court Security Office.

Dated: July 14, 2008